NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY VILLANUEVA, *et al.*,<br><br>Defendants. | Case No. 2:19-cr-00292 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion in Limine by Plaintiff United States of America ("Government"), seeking to exclude expert testimony. (ECF No. 42.) Defendants Anthony Villanueva ("Villanueva") and Drew Inman ("Inman" and, together with Villanueva, "Defendants") opposed the motion. (ECF Nos. 50, 51.) The Government filed a reply. (ECF No. 54.) Having reviewed the submissions filed in connection with the motion and having held oral argument on March 2, 2022, for the reasons set forth below and for good cause having been shown, the Government's motion is **GRANTED**.

**I.   BACKGROUND**

As alleged in the Indictment returned on April 18, 2019, Defendants were police officers employed by the Trenton Police Department in Trenton, New Jersey. (ECF No. 1.) On April 9, 2017, Defendants pursued an individual who was identified in the Indictment as Victim 1. (*Id.* ¶ 2.) Just prior to Defendants' involvement, Victim 1 had eluded law enforcement in their efforts to effectuate a traffic stop. (*Id.*) After Victim 1 abandoned his vehicle, Defendants chased him on foot to the banks of the Delaware and Raritan Canal. (*Id.* ¶¶ 3–4.) Victim 1 entered the canal, swam

across, and exited the canal on the opposite bank in a brush-strewn area abutting a parking lot. (*Id.* ¶ 4.) A chain link fence separated the area from the parking lot. (*Id.* ¶ 5.)

Police officers awaiting Victim 1 in the parking lot ordered him to raise his hands in the air above his head and climb over the fence that separated them. (*Id.*) In the meantime, Defendants' foot chase led them to the brush-strewn area. (*Id.* ¶ 6.) While Victim 1 was complying with orders from officers on the opposite side of the fence, Defendants tackled and punched him. (*Id.* ¶¶ 7–9.) Following the incident, Defendants memorialized the encounter in law enforcement reports. (*Id.* ¶ 11.)

Count One of the Indictment charges Defendants with deprivation of rights under color of law, in violation of 18 U.S.C. §§ 242 and 2. (*Id.* ¶¶ 12–13.) Counts Two and Three charge Villanueva for the falsification of a use of force report and his supplemental police report, respectively, and Count Four charges Inman with the falsification of a use of force report, each a violation of 18 U.S.C. § 1519.[1] (*Id.* ¶¶ 14–20.)

On October 20, 2021, Villanueva submitted to the Government a report authored by Mr. Glenn G. Miller ("Miller"), Law Enforcement Policy, Procedures and Professional Standards Consultant. (Gov. Mot. Exs. (ECF No. 42-2) at 1–37.) Miller states in his report, among other things, "Officer Villanueva, who had pursued [Victim 1] through the yards and over fences, jumps over the 6-foot fence gate traverses about 60 feet in that backyard experiencing what I believe is tunnel vision . . . and tackles [Victim 1] to the ground." (*Id.* at 9.) Miller's report further states:

> Villanueva decided to cross the canal on West Hanover Street as it appeared [Victim 1] was going in that direction. When [Victim 1] came out of the canal and entered the backyard of 238 West Hanover St., Villanueva appears to be in the area of the parking lot next to

---

[1] The Government's motion concerns only Counts One through Four of the Indictment. Counts Five and Six, charging Villanueva with deprivation of rights and records falsification arising out of a November 2017 incident with a second victim, have been severed.

2

> the 238 West Hanover. There is no way Villanueva would have known on the night of this incident if that yard was completely fenced-in or was partially fenced-in. A reasonable police officer would assume [Victim 1] would continue his flight from the police in some way. From Villanueva's location, it is doubtful he could hear all the various commands being given to [Victim 1] as he was focused on [Victim 1]. I believe, based on my experience and training that he was experiencing what most police who have been in extremely dangerous or critical incidents have experienced and it is called "tunnel vision".

(*Id.* at 12.) Miller concludes in his report, "the actions taken by Officer Anthony Villanueva regarding the arrest of [Victim 1] on April 9, 2017, were necessary and objectively reasonable considering the circumstances known to that officer at the time he used physical force." (*Id.* at 29.) He further states, "[T]here is no question in [Miller's] mind that the actions of Officer Villanueva and for that matter the actions of the other 4 [Trenton Police Department] officers who used physical force on [Victim 1] was clearly justified." (*Id.* at 32.)

On November 4, 2021, Inman submitted to the Government a report authored by Mr. Karl Ulbrich ("Ulbrich"), Law Enforcement Consultant. (ECF No. 42-2 at 38–85.) Ulbrich's report states, among other things, "I found no indication Officer Inman intentionally tackled [Victim 1] to the ground as [Victim 1] was attempting to comply with orders from police officers, or that Officer Inman acted in intentional conflict with orders from any other officer." (*Id.* at 59.) Ulbrich's report also states, "[Victim 1] refused to comply with commands directing him to relinquish his hands and the strikes delivered to [Victim 1] were directed to gain his compliance." (*Id.* at 62.) Ulbrich's report concludes:

> Based on my review of the provided information concerning Officer Inman's use of physical force in conjunction with the arrest of [Victim 1] my professional opinion is the degree, method, and circumstances of the limited use of physical force employed by Officer Inman appears to have been reasonably necessary, proportionately appropriate and within the parameters of an acceptable use of force under the New Jersey Attorney General's Guidelines for the Use of Force.

3

(*Id.* at 64.)

On December 2, 2021, the Government filed a motion to exclude defense expert testimony. (ECF No. 42.) On December 20, 2021, Defendants filed oppositions to the motion. (ECF Nos. 50, 51.) On January 7, 2022, the Government filed a reply. (ECF No. 54.) The Court heard oral argument on March 2, 2022. (ECF No. 59.)

## II.   LEGAL STANDARD

A motion in limine is "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). "The district court is given wide latitude in deciding what should be allowed into evidence." *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988) (citing *Complaint of Bankers Trust Co.*, 752 F.2d 874, 889–90 (3d Cir. 1984)). In exercising this discretion, the court "has a duty to limit the jury's exposure to only that which is probative and relevant," *id.* (citing Fed. R. Evid. 103(c)), while bearing in mind "[t]he Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks omitted).

## III.   DECISION

The Government argues both Miller's and Ulbrich's proffered testimony regarding the reasonableness of Defendants' conduct is an inadmissible legal conclusion. (ECF No. 42-1 at 8–14.) The Government also contends the experts' state-of-mind testimony is inadmissible (*id.* at 14–16), as is their testimony regarding the events in question based on their interpretations of body worn cameras and written reports (*id.* at 16–17). The Court addresses each in turn.

A. **The Reports Offer Inadmissible Legal Conclusions**

The Fourth Amendment prohibits the use of unreasonable force when making an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Id.* at 395. This Fourth Amendment "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Here, the issue is whether Defendants' actions were "objectively reasonable in light of the facts and circumstances," considering, among other things, the severity of the crime, the threat to the safety of the officers or others, and whether the suspect resisted or attempted to evade arrest. *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020).

The Government argues the proffered testimony of both experts states a legal conclusion—that Defendants' use of force against Victim 1 was reasonable—and accordingly, such testimony is inadmissible. (ECF No. 42-1 at 14.) Inman contends specialized knowledge is necessary to determine whether Defendants' conduct was objectively reasonable because the Indictment "does not allege misconduct within the everyday grasp of a juror[.]" (ECF No. 50 at 4.)

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert[2] testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[2] The Government does not concede Defendants' experts are qualified and reserves the right to conduct an appropriate *voir dire* and assert a challenge to their qualifications if warranted. (ECF No. 54 at 1 n.1.) Accordingly, the Court does not determine whether the defense experts have the sufficient expertise and experience here.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has described Rule 702 as the embodiment of "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993))). "The District Court has discretion to determine whether expert testimony will help the trier of fact." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). The proponent of the expert testimony bears the burden of meeting these elements, and of showing that "good grounds" exist for the expert's opinion by a preponderance of the evidence. *See U.S. v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004); *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 490 (D.N.J. 1998) (citing *Daubert*, 509 U.S. at 593 n.10)).

Rule 704 provides the general rule that an expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. R. 704(a). Rule 704(b) sets forth the exception to that rule:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

6

Fed. R. Evid. R. 704(b). Therefore, while Rule 704 allows experts to provide an opinion about the "ultimate issue" in a case, it prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013).

In addition to the limitations on experts imposed by Rules 702 and 704, expert evidence is subject to Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595 (stating analysis under Rule 702 should also include a consideration of other evidence rules, such as Rule 403). Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The decision to admit or exclude evidence pursuant to Rule 403 is within the court's discretion. *United States v. Jones*, No. 16-516, 2017 U.S. Dist. LEXIS 65721, at *8 (D.N.J. May 1, 2017).

Applying those standards, the Court concludes the experts' conclusions regarding the reasonableness of the Defendants' actions are inadmissible. The reports provide a play-by-play of the body-worn cameras and summaries of the various reports filed in connection with the April 9 incident, apply the legal standard of "reasonableness" to those facts, and state the conclusion they believe should be drawn, *i.e.*, that Defendants' use of force was objectively reasonable. Because the reports imply some level of legal analysis on their part, they are inadmissible. *See Holman Enter. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (disallowing an expert's report replete with legal conclusions and speculations); *Holliday v. City of Elizabeth*, Civ. A. No. 13-1006, 2018 U.S. Dist. LEXIS 26356, at *50 (D.N.J. Feb. 20, 2018) (excluding expert opinion because it improperly opines on the correct legal standard).

The Court also rejects Defendants' argument the reasonableness of the misconduct alleged is beyond the grasp of the average juror. Moreover, any probative value of the experts' experience

is outweighed by the prejudicial effect supplying the experts' conclusions to the jury would have. *Jones*, 2017 U.S. Dist. LEXIS 65721, at *8 ("[A]pplication of expertise to the witnesses' credibility oversteps the proper bounds of expert testimony under Rule 702; interferes with the jury's core fact-finding function; and for these reasons has a probative value that is substantially outweighed by the danger of prejudice under Rule 403.").

Accordingly, the Government's motion to exclude Ulbrich's and Miller's testimony regarding the reasonableness of Defendants' conduct is **GRANTED**.

    **B.**    **The Reports Offer Inadmissible State-of-Mind Testimony**

The Government argues the state-of-mind testimony offered by Ulbrich and Miller is inadmissible. (ECF No. 42-1 at 14–16.) Specifically, the Government objects to Ulbrich opining that Inman's strikes to the victim were administered to gain his compliance and that Inman did not intentionally tackle the victim to the ground. (*Id.*) The Government also objects to Miller opining that Villanueva did not know what other officers were doing on scene and Villanueva experienced "tunnel vision". (*Id.*) Villanueva contends the "tunnel vision" opinion is necessary for a jury's evaluation of an officer's conduct for reasonableness. (ECF No. 51 at 4.) The Court agrees with the Government.

As discussed above, Rule 704(b) prohibits an expert in a criminal case from opining as to "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). The Third Circuit has explained that expert testimony is admissible under Rule 704(b) if it "support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir. 1998)

(quoting *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)). An expert violates Rule 704(b) where he directly refers to the defendant's intent, mental state, or mens rea. *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (citing *United States v. Lipscomb*, 14 F.3d 1236, 1240 (7th Cir. 1994)). "Rule 704 prohibits 'testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.'" *Id.* (quoting *Bennett*, 161 F.3d at 182 (quoting *Morales*, 108 F.3d at 1037))).

The elements of a violation of Section 242 require that the Defendants: (1) were acting under color of law, (2) deprived Victim 1 of his right to be free from unreasonable search and seizure, (3) acted willfully in depriving Victim 1 of this right, and (4) caused bodily harm to Victim 1. *United States v. Lanier*, 520 U.S. 259, 264 (1997). Here, both Ulbrich and Miller address the third element of the charge, *i.e.*, the willfulness of Defendants' actions, by concluding the Defendants lacked the requisite intent or mental state. Ulbrich's report plainly describes the intent behind Inman's strikes, *i.e.*, to gain the victim's compliance. (ECF No. 42-2 at 62.) He directly addresses Inman's intent when he states, "I found no indication Officer Inman intentionally tackled [Victim 1] to the ground as [Victim 1] was attempting to comply with orders from police officers, or that Officer Inman acted in intentional conflict with orders from any other officer." (*Id.* at 59.) Miller likewise ascribes to Villanueva the mental state of "tunnel vision." (*Id.* at 9.) He goes on to state what he believes Villanueva knew or did not know: "There is no way Villanueva would have known on the night of this incident if that yard was completely fenced-in or was partially fenced-in. . . . . From Villanueva's location, it is doubtful he could hear all the various commands being given to [Victim 1] as he was focused on [Victim 1]." (*Id.* at 12.)

The opinions of Ulbrich and Miller are designed to address Defendants' intent or mental state. If their testimony is credited, it necessarily follows Defendants lacked the requisite mens rea

9

and, therefore, the testimony is impermissible under Rule 704. *Bennett*, 161 F.3d at 183; *Watson*, 260 F.3d at 309. Accordingly, the Government's motion to exclude Ulbrich's and Miller's testimony regarding the Defendants' mental states is **GRANTED**.

    **C.**    **The Reports Offer Inadmissible Testimony Regarding Events of April 9, 2017**

The Government seeks to exclude Miller's and Ulbrich's version of the events adduced from their review of camera footage and documentation. (ECF No. 42-1 at 16–17.)

Courts have rejected attempts by proposed experts to summarize the factual events surrounding excessive force cases and give their own interpretation of what happened. In *Holliday v. City of Elizabeth*, for example, the court found "that the conclusions in [the expert]'s report regarding hotly disputed facts as to what happened in the club parking lot between Plaintiff and [the officer] are not subject to expert testimony; they are classic factual issues for the jury to decide." 2018 U.S. Dist. LEXIS 26356, at *50.

Here, Miller's and Ulbrich's reports summarize the camera footage and reports of the April 9 incident between Victim 1 and Defendants, and the experts give their own interpretations of what happened. The jury, however, can review the camera footage, hear witness testimony, and review the reports for themselves. *See Holliday,* 2018 U.S. Dist. LEXIS 26356, at *50; *see also, e.g., United States v. Harvey*, 405 F. Supp. 3d 667, 672 (S.D. Miss. 2019) (holding an expert would not be permitted to "opine on what happened" based on interviews and other evidence because that "invades the province of the jury and presents hearsay evidence as expert opinion"); *United States v. Rodella*, No. 14-2783, 2014 U.S. Dist. LEXIS 164773, at *78 (D.N.M. Nov. 19, 2014) (explaining an expert stating what is obvious for a jury, who can see video evidence for itself, is not an expert at all, but "becomes a summary witness through whom the party summarizes its

case"). Accordingly, the Government's motion to exclude Ulbrich's and Miller's summaries and interpretations of the footage and reports is **GRANTED**.

**IV.    CONCLUSION**

For the reasons set forth above, the Government's Motion in Limine to exclude Ulbrich's and Miller's testimony summarizing and interpreting the camera footage and reports of the April 9 incident between Victim 1 and Defendants, as well as Ulbrich's and Miller's expert testimony regarding the reasonableness of Defendants' actions and Defendants' states of mind (ECF No. 42) is **GRANTED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2022